BRADFORD, Judge,
dissenting.
Because I do not believe the majority opinion is an appropriate application of the mitigation of damages doctrine, I respectfully dissent. I would reject the Hey-manns’ argument that Fischer failed to mitigate her damage on February 18, 2006, by not responding to the Heymanns’ inspection response, affirm the trial court’s holding that Fischer failed to mitigate her damages on February 16, 2007, by not accepting Johnson’s offer to purchase the home for $240,000.00, and affirm the court’s judgment for Fischer in the amount of $93,972.18.
I. Fischer’s Duty to Mitigate on February 18, 2006
Although I agree that, on February 18, 2006, Fischer had a duty to mitigate her damages resulting from the Heymanns’ anticipatory breach, I do not believe this required her to surrender to the very demand which generated that breach. “In Indiana, an anticipatory breach of a contract excuses the [non-breaching] party from further performance, permits [him] to treat the contract as terminated, and allows [him] to immediately sue for damages.” Page Two, Inc. v. P.C. Mgmt., Inc., 517 N.E.2d 103, 107 (Ind.Ct.App.1987) (citing Ind. Life Endowment Co. v. Carnithan (1915), 62 Ind.App. 567, 109 N.E. 851, trans. denied). The non-breaching party, however, may also “elect to stand upon his contract and perform, or offer to perform, all the conditions thereof required of him, and then, when the day of performance arrives, proceed to enforce his contract.” Carnithan, 62 Ind.App. 567, 109 N.E. at 854. The majority opinion would take away the former option and compel the latter, contrary to longstanding Indiana law.
The majority opinion emphasizes that Fischer’s contractual obligations are not at issue in this case. Op. 1160-61. But to require that Fischer proceed to closing, the terms of the purchase agreement must be given effect, and the purchase agreement incorporates any terms subsequently agreed to in the Buyer’s Inspection Response. Had Fischer assented to the Inspection Response, she would have been obligated to make the designated minor repairs, but such actions would have been in performance of the purchase agreement, not in mitigation of damages. Absent her assent, the purchase agreement did not obligate Fischer to repair minor defects in the home, Fischer v. Heymann, 943 N.E.2d 896, 901 (Ind.Ct.App.2011), trans. denied, and courts will not require a party acting pursuant to a contract to be “reasonable.” First Fed. Sav. Bank of Ind. v. Key Markets, Inc., 559 N.E.2d 600, 604 (Ind.1990).
In a departure from the typical notion of mitigating damages,[13] the majority opinion *1165 requires the non-breaching party to take actions with and advantageous to the breaching party which, but for that adversary’s breach, she was under no obligation to take. I believe this application of the doctrine is contrary to law and, in the present context, licenses buyers to demand minor repairs with impunity, rendering moot the “major defect” provisions found in countless real estate contracts.
II. Fischer’s Duty to Mitigate on February 16, 2007
In light of my belief that Fischer did not fail to mitigate her damages on February 18, 2006,1 would reach the issue of whether she failed to do so on February 16, 2007. The trial court held:
30. Through the exercise of reasonable diligence, [Fischer] could have mitigated her damages on February 16, 2007, by accepting Johnson’s offer of Two Hundred Forty Thousand Dollars ($240,000.00).
Appellant’s App. p. 23. This conclusion is supported by the trial court’s findings that “Johnson’s offer was based on comparative listings and sales of other similar units around that time” (ie., that the offer was reasonable) and, had Fischer accepted Johnson’s offer, “the Johnson sale would have proceeded to closing[.]” Appellant’s App. p. 21.
Fischer argues that the trial court’s finding that Johnson’s offer was reasonable is clearly erroneous. Specifically, Fischer claims the evidence shows that $240,000.00, or $79.00 per square foot, was below the “fair market value” of $89.00 per square foot for comparable units at the time. Appellant’s Br. p. 9. I would disagree. As the Heymanns contend, the trial court made no finding regarding the home’s fair market value, and the evidence does not necessarily reflect $89.00 as the appropriate figure. The evidence shows that, in 2006, two units sold for $96.00 and $89.00 per square foot, respectively; in 2007, no units sold; and in 2008, one unit sold for $58.00 per square foot. Additionally, Johnson’s realtor, Carol Ayres, testified that a reasonable price in February of 2007 would have been “well under” $110 per square foot, Tr. p. 133, and the Hey-manns’ expert witness, Real Estate Broker Michael Fox, testified that $75.00 per square foot would have been “a reasonable offer to work with.” Tr. p. 111. Fischer’s claim is merely invitation to reweigh the evidence, which we will not do. Smith v. Smith, 938 N.E.2d 857, 860 (Ind.Ct.App. 2010).
Fischer also challenges the trial court’s finding that, had she accepted Johnson’s $240,000.00 offer, “the Johnson sale would have proceeded to closing.” Appellant’s App. p. 23. Fischer claims that this finding is clearly erroneous because it relies on pure speculation. Realtor Ayers, however, testified that Johnson was “willing and able” to close on the home at $240,000.00, and it was within the trial court’s discretion to credit this testimony. Gates v. Houston, 897 N.E.2d 532, 536 (Ind.Ct.App.2008). Moreover, had Fischer accepted the offer, Johnson would have been contractually bound to close on the home whether he ultimately did so or not. Fischer’s claim is therefore without merit.
Because I believe that the evidence supports the trial court’s findings and that these findings support its judgment, I would affirm the trial court’s holding that Fischer failed to mitigate her damages on February 16, 2007. Accordingly, I would also affirm its judgment for Fischer in the amount of $93,972.18, representing $75,000.00 in damages,- $15,109.68 in carrying costs, and $3862.50.in, attorney’s fees, all calculated as of the date Fischer failed to mitigate.

. See, e.g., Hampton v. Morgan, 654 N.E.2d 8, 10 (Ind.Ct.App.1995) (suggesting damages from lost real estate sale can be mitigated by finding a replacement buyer); Sandor Dev. Co. v. Reitmeyer, 498 N.E.2d 1020, 1023 (Ind.Ct.App.1986) (requiring landlord to make reasonable efforts to re-let a rental property following tenant's abandonment); Salem Cmty. Sch. Corp. v. Richman, 406 N.E.2d 269, 275 (Ind.Ct.App.1980) (requiring non-breaching party to an employment contract to make a reasonable attempt to find work of a similar nature).